**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-CR-25-TS |
| | ) | |
| DESHAWN T. BURNETT | ) | |

**OPINION**

**A.      Background**

The Defendant, Deshawn Burnett, was indicted on March 28, 2007, for knowingly and intentionally possessing with the intent to distribute five hundred grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1).

On June 27, 2007, the Defendant filed a motion to suppress evidence discovered in a search of his house and in a search of a storage locker rented by the Defendant.[1] At issue is whether the search warrant authorizing the search was supported by probable cause.

The only evidence presented to the judge signing the search warrant was an affidavit written by Fort Wayne Detective Brian Martin. Martin's affidavit describes the investigation of the Defendant, starting in November 2006, and continuing until March 9, 2007, when the warrant was issued. In November 2006, the Defendant was found to have $35,500 of cash in his possession during a routine traffic stop. The Defendant disclaimed knowledge of the cash.

On January 17, 2007, Fort Wayne Detective Kim Seiss visually identified the Defendant in the garage at 528 Currie Hill Street.[2] Seiss observed a white Ford Expedition with a

---

[1] The government does not seek to use any evidence obtained in the search of the storage unit, and so, this Opinion does not address the search warrant for the storage unit.

[2] The search warrant affidavit referred to "Curry Hill Street," though the address searched was "Currie Hill Street." However, there is no "Curry Hill Street" in Fort Wayne and Martin's reference to "Curry Hill Street"

registration plate of PA 1603 at the address. It was registered to the Defendant. Seiss again saw the white Ford Expedition at 528 Currie Hill Street, having the same plates, on January 25, January 31, and February 10.

On January 30, 2007, Martin received an anonymous tip that the Defendant lived at 528 Currie Hill Street with a woman named Leslie and that he was a well-known drug dealer. Fort Wayne detectives had already learned that the Defendant's girlfriend's name was Leslie Murphy.

On March 2, 2007, Fort Wayne detectives retrieved the trash from 528 Currie Hill Street and found mail and papers indicating that the Defendant and Leslie Murphy resided at 528 Currie Hill Street. One paper was a receipt for a storage unit indicating payment of $100. On the line marked customer was handwritten the name Deshawn Burnett.

On March 9, 2007, Fort Wayne detectives were conducting surveillance of a known drug house at 2344 Oliver Street. Martin stated in the affidavit that based on his training and experience in narcotics investigations, the activity observed at the location—a large number of vehicles and individuals coming and going to this address, staying only a short amount of time—indicated that drug trafficking was taking place at the house. One vehicle leaving the house was stopped and its occupants were found in possession of a felony amount of marijuana. Fifteen minutes after this stop, the detectives observed a white Ford Expedition with Purdue license plates approach 2344 Oliver Street. An individual believed to be Taureen Hayden, who was under investigation for high-volume drug trafficking, entered the front passenger door of the white Ford Expedition and exited after about a minute. Hayden returned to 2344 Oliver Street. The white Ford Expedition drove away. The detectives observed that the only individual in the

---

appears to be a spelling mistake.

vehicle was the driver.

The detectives prepared to stop the white Ford Expedition for having false and fictitious plates when the white Ford Expedition pulled into an alley near Harrison Street and Williams Street. Detective Gigli activated his lights and approached the vehicle. The driver of the white Ford Expedition exited the vehicle and fled on foot. He was wearing a dark-colored jacket and tan colored pants. Martin saw the driver and joined the chase. Martin and Seiss seized the driver. Gigli was told by witnesses of the pursuit that the driver had been carrying a light-brown colored package while fleeing police. K-9 officer Ambrose and his dog tracked the path of the chase and discovered a light-brown colored package in the rear yard of 124 W. Butler Street. The affidavit describes the training and experience of the K-9 dog. Gigli's training and experience led him to believe the package to be a kilogram of narcotics. Field testing confirmed that the package contained 1,090 grams of cocaine. The driver apprehended during the pursuit was identified as the Defendant. The white Ford Expedition's VIN number was that of the vehicle registered to the Defendant.

Martin describes his training and experience in the affidavit and states that such training and experience led him to believe that drug traffickers commonly possess firearms, records of transactions, drugs, and currency in their residences. Martin concludes that he has probable cause to find evidence that the Defendant committed drug related crimes at his residence at 528 Currie Hill Street.

On March 9, 2007,[3] Judge Gull signed warrants to search 528 Currie Hill Street and the storage unit listed on the receipt obtained in the garbage from 528 Currie Hill Street.

---

[3] The search warrant includes the date October 13, 2006, typed above the signature, but that was scratched out, and written over the top was the date "9th March, 2007 @ 10:32 P.M."

**B.      Standard for Suppressing Evidence Obtained by a Search Warrant**

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003). "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* at 756.

> The magistrate judge's decision to issue a warrant "is to be given considerable weight" and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Koerth*, 312 F.3d 862, 866–67 (7th Cir. 2002) (quoting *United States v. Spry*, 190 F.3d 829 (7th Cir. 2002)).

Direct evidence linking the alleged crimes to a particular location is not necessary for probable cause to exist. *United States v. Lamon*, 930 F.2d 1183, 1187 (7th Cir. 1991). "An

4

issuing court 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'"*Id.* at 1188 (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)). "'In the case of drug dealers, evidence is likely to be found where the dealers live.'" *Id.* at 1188 (quoting *Angulo-Lopez*, 791 F.2d at 1399).

Affidavits supporting a search warrant are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154 (1978). When the veracity of the affidavit is challenged, a defendant may be entitled to an evidentiary hearing if he meets certain requirements outlined in *Franks*:

> To mandate an evidentiary hearing . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171–72. In addition, the Defendant must show that the incorrect statement was material, that is, was necessary for a finding of probable cause to issue the warrant. *United States v. McAllister*, 18 F.3d 1412, 1416 (7th Cir. 1994).

If the veracity of the affiant is not challenged, evidence obtained pursuant to a facially valid warrant issued by a neutral, detached magistrate is suppressed only if: "(1) the warrant is later invalidated; and (2) the police could not have relied in objective good faith upon the neutral and detached magistrate's decision to issue the warrant." *United States v. Koerth*, 312 F.3d 862, 865–66 (7th Cir. 2002)**.**


**C.**     **The Search Warrant Is Valid**

5

The Defendant argues that the search warrant affidavit would not give a reasonably prudent person cause to believe that a search at 528 Currie Hill Street would uncover evidence related to drug dealing. The Court disagrees.

The facts stated by Martin in the search warrant affidavit strongly suggest that the Defendant was trafficking large amounts of cocaine. He was found with over $35,000 in cash in his car of which he claimed no knowledge. A car registered to the Defendant was observed driving to a suspected drug house. When the vehicle stopped, a suspected drug dealer entered the vehicle for a minute and left. Upon leaving the suspected drug house, the vehicle was stopped by police, and the driver fled. The Defendant was seized, and he matched the description of the individual who fled the vehicle. Witnesses said he carried a package, and a matching package containing over a kilogram of cocaine was found in the area through which he had fled. Finally, an anonymous tipster told police the Defendant was dealing drugs and he lived at 528 Currie Hill Street with Leslie, which was consistent with what the officers had found from their own investigation.

The facts stated by Martin in the search warrant affidavit strongly suggest that the Defendant resided, or at least was often present, at 528 Currie Hill Street. Detective Seiss observed the Defendant and a vehicle registered to him at that location on January 17th and saw the vehicle at the location again on January 25 and 30, and February 10. Martin received an anonymous tip that the Defendant lived at 528 Currie Hill Street with Leslie. On March 2, Fort Wayne detectives retrieved from the trash at 528 Currie Hill Street mail and papers indicating that the Defendant and Leslie Murphy resided at that address. There was no evidence submitted in the affidavit that would tend to suggest that the Defendant did not live at 528 Currie Hill

6

Street.

Martin stated in his affidavit that his training and experience suggested to him that drug dealers often keep drugs, currency, records, and firearms at their residence. No evidence was contained in the affidavit to suggest that the Defendant did not have those items at his residence or at his storage shed.

There was no direct evidence that any drug related activity had occurred at 528 Currie Hill Street, but none was needed. The facts strongly suggesting the Defendant was engaged in drug trafficking of large amounts of cocaine make it logical to infer that the Defendant had drugs, currency, records of such trafficking, or other tools of the trade hidden somewhere. Ample evidence was described in the affidavit suggesting that the Defendant lived at 528 Currie Hill Street. Martin stated that his training and experience led him to believe that drug dealers often store drugs and related items at their residences. These facts constitute substantial evidence that items related to the Defendant's ongoing drug trafficking would be found at 528 Currie Hill Street.

This conclusion is supported by the Seventh Circuit's decision in *Lamon*. In that case, the court held that where the police had evidence indicating a suspect was trafficking large amounts of drugs, ("2.7 kilograms of cocaine, a centigram balance scale, drug packaging materials, and a cutting agent often used to increase the weight of cocaine" as well as records of drug transactions), probable cause existed to search his primary residence even though an informant indicated that the defendant sold drugs only out of a different house and his car. *Lamon*, 930 F.2d at 1186, 1190. In this case, as in *Lamon*, substantial evidence suggested the Defendant was trafficking in large amounts of drugs. Also, in both cases, there was no direct evidence of any

7

drug related activity at the defendant's primary residence. In both cases, there was no convincing evidence presented that the defendants' residences were not being used to store drug related items. Just as the *Lamon* court held probable cause existed to search that defendant's residence, probable cause existed in this case to search the Defendant's residence.

The Defendant attempts to offer innocent explanations for the facts stated in Martin's affidavit. For example, the Defendant postulates that the fact of his carrying $35,500 could be explained by his being a "trust fund baby" or a lottery winner.[4] (Def. Br. 6, DE 31.) Standing alone, this fact would not be sufficient to suggest that the Defendant would have drug related items at 528 Currie Hill Street on March 9, 2007. However, when determining whether a search warrant affidavit gives sufficient grounds for a finding of probable cause, a court looks to the totality of the circumstances. *United States v. Caldwell*, 423 F.3d 760, 760 (7th Cir. 2005) ("[The divide and conquer approach] misses the point because the decision is based on the totality of the circumstances."). The totality of the circumstances presented by Martin's affidavit make it reasonable to infer that the Defendant would keep drugs and drug related items at his residence.

The Defendant cites several cases that found a search warrant to search a residence supported by probable cause, and he distinguishes the facts of those cases from the facts at issue here. However, the cases cited by the Defendant show that courts consistently uphold as reasonable the inference that drug dealers keep items related to drug dealing at their residence. This is not a hard and fast rule and the inquiry is fact specific, but there is no evidence in this

---

[4] It seems unlikely that a trust fund baby or lottery winner would carry $35,000 in cash in his car. Its further doubtful that, if he did, he would disclaim any knowledge of the money.

case that would tend to suggest the inference was unreasonable.

The only cases from this circuit that the Defendant cites in which the search warrant affidavit failed to give probable cause are *United States v. McNeil*, 82 F. Supp. 2d 945 (S.D. Ind. 2000) and *United States v. Dickerson*, 975 F.2d 1245 (7th Cir. 1992). The affidavit at issue in *McNeil* was found deficient because it contained only a conclusory allegation that the defendant controlled the property to be searched. The affidavit described conduct suggesting the defendant was engaged in drug trafficking. The affidavit contained no facts to support the allegation that the defendant controlled the property. It contained no facts to suggest the residence to be searched was the Defendant's residence, or even that the Defendant had ever been present at the residence. No other connection between the residence and the Defendant or his criminal activity was alleged. *McNeil*, 82 F. Supp. 2d at 957–58. Therefore, the court found the affidavit failed to provide the magistrate with a substantial basis to conclude that evidence related drug trafficking would be found at the property. Unlike the facts in *McNeil*, the affidavit in this case describes convincing evidence that the Defendant was frequently present at the property to be searched.

The problem with the search warrant affidavit in *Dickerson* was the same as that in *McNeil*. In *Dickerson*, a search warrant was obtained for an address thought to be that of a bank robber. The search warrant affidavit stated only that a bank robber's getaway car had a license plate number registered to the address sought to be searched. It did not allege that the car had been seen at the location or offer any other evidence to connect the address to the suspect or the bank robbery. *Dickerson*, 975 F.2d at 1249–50. Unlike *Dickerson*, in this case, the search warrant affidavit strongly suggested a connection between the Defendant and 528 Currie Hill Street.

9

To conclude, in this case, substantial evidence existed to believe that the Defendant was trafficking large amounts of drugs and that he was frequently present at 528 Currie Hill Street during the months prior to March 9, 2007. Only a week earlier, Fort Wayne detectives found papers in the trash supporting the conclusion that the Defendant lived there. Martin stated that his training and experience suggested to him that those engaged in drug trafficking often keep drugs and related items at their primary residence. Seventh Circuit case law and common sense support the reasonableness of that proposition. No evidence was present in the affidavit to suggest that the Defendant did not keep drug related items at his house. Therefore, there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.[5]

**ORDER**

For the reasons stated, the Defendant's motion to suppress [DE ] is DENIED.

SO ORDERED on August 17, 2007.

 /s/ Theresa Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[5] The Court also notes that even if the search warrant in this case was found to be lacking probable cause, it would not suppress the evidence obtained in the search. The Defendant has presented no argument that, when he was writing his affidavit, Martin deliberately lied or had a reckless disregard for the truth. Also, the Defendant does not argue that the police could not have relied in objective good faith upon the neutral and detached magistrate's decision to issue the warrant. Unless either of these requirements is satisfied, the evidence of the search could not be suppressed even if the warrant was invalid.